# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PENNIEWELL, | 1:06-CV-01010 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KEN CLARK, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Los Angeles, following his conviction by plea of guilty on April 12, 1982, to second degree murder in violation of Cal. Penal Code § 187. See Respondent's Answer to Petition (hereinafter "Answer"), Exhibit 1.  Petitioner was sentenced to serve an indeterminate term of fifteen years to life in state prison with the possibility of parole. Id.

On March 16, 2005, Petitioner attended a subsequent parole suitability hearing before the

California Board of Prison Terms (now the Board of Parole Hearings - "BPH"). See Answer, Exhibit 3. Petitioner participated in the hearing and was represented by counsel. Id. At the conclusion of the hearing, the BPH concluded Petitioner was suitable for parole. Id. at 44.

On August 12, 2005, after considering the parole decision of the BPH, the Governor reversed the Board's decision. See Answer, Exhibit 4.

Petitioner sought relief in the state courts. He filed a habeas petition in the Los Angeles County Superior Court on September 20, 2005, which was denied in a reasoned decision on September 29, 2005. See Answer, Exhibit 5. He then filed a habeas petition in the California Court of Appeals, Second Appellate District on November 8, 2005. See Answer, Exhibit 6. That petition was denied on February 15, 2006. Id. Finally, Petitioner filed a petition for review in the California Supreme Court on March 13, 2006. See Answer, Exhibit 7. On March 17, 2006, the petition was summarily denied. Id.

Petitioner filed the instant petition for writ of habeas corpus on June 19, 2006, in the United States District Court, Central District of California. The petition was transferred to this Court on July 3, 2006. The petition challenges the Governor's 2005 decision reversing the Board's grant of parole.

On January 25, 2007, Respondent filed an answer to the petition. Respondent concedes Petitioner has exhausted his state remedies and the petition is timely. Petitioner filed a traverse on April 26, 2007.

## **FACTUAL BACKGROUND**[1]

On the evening of April 24, 1981, Petitioner and two others assaulted a 40-year old man who was walking along some railroad tracks in Los Angeles. The three individuals knocked the victim to the ground and took his wallet. One of the three then shot the victim in the back with a sawed-off .22 caliber rifle. The victim managed to go to a liquor store where he sought help. However, the victim eventually died from the gunshot wound.

Five days later on the afternoon of April 29, 1981, a man driving his vehicle was stopped

---

[1] The information is derived from the probation officer's report. See Answer, Exhibit 2.

at an intersection to allow a woman to cross the street. For an unknown reason, the woman accused the man of attempting to hit her with the car. A heated argument ensued. Petitioner, who had been standing on the porch of a nearby residence, joined in the argument which culminated with Petitioner saying, "Motherfucker, I'm gonna shoot your ass." Petitioner ran inside the residence and returned with a .22 caliber rifle and fired approximately 8 to 10 shots at the victim through the windshield.

## DISCUSSION

I.      Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to

or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). In the state parole context, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128.  In determining whether the "some evidence" standard is met, this Court need not examine the entire

record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, this Court must determine whether there is any evidence in the record that could support the conclusion reached by the Governor. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

>In making a determination whether an inmate is suitable for parole, the parole board is guided by the following regulations:
>
>>(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>>
>>(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given with advance notice of the hearing, he was represented by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the Board's reasons. See Answer, Exhibit 3. All of this information was submitted to the Governor and considered in his decision.

Petitioner, however, contends the Governor's decision had no evidentiary support. After reviewing the record, the Court finds that the state court decisions rejecting Petitioner's claims were not unreasonable, because the Governor's decision is supported by at least "some evidence."

Title 15, of the California Code of Regulations, Section 2402(c) sets forth certain negative factors which the Board would consider in determining whether Petitioner is suitable for parole.

Section 2402(c) provides:

> Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:
>
> (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
> (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>
> (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>
> (C) The victim was abused, defiled or mutilated during or after the offense.
>
> (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>
> (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
> (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
> (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.
>
> (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
> (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
> (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

15 Cal.Code Regs. § 2402(c).

In reversing the Board's decision, the Governor considered and found several factors indicating unsuitability per § 2402(c). First, the Governor relied on Petitioner's previous record

of violence pursuant to § 2402(c)(2). The Governor noted Petitioner was a gangmember and had an extensive criminal history going back to an early age. At only nine years old, Petitioner was detained and counseled for burglary. At fifteen, he was adjudicated and placed on probation for fighting and carrying a knife while on school grounds. Between the ages of fourteen and seventeen, he was arrested numerous times for burglary, marijuana, carrying a loaded and concealed weapon, and robbery. While he was not convicted of these crimes, Petitioner did admit on previous occasions to committing three prior robberies and carrying a loaded weapon when "dealing dope." Thus, there was ample evidence to support the Governor's finding on this factor.

The Governor further found Petitioner had engaged in misconduct while incarcerated. The Governor noted that Petitioner had been disciplined seven times for misconduct, most recently in 2000, and he had been counseled eleven times for minor misconduct. Petitioner had also admitted on a previous occasion to purchasing drugs in 1989. While these facts arguably do not qualify as "serious misconduct" pursuant to § 2402(c)(6), they are relevant to the determination under § 2402(b). As set forth above, § 2402(b) provides that "all relevant, reliable information available . . . shall be considered" including such information as the prisoner's "past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; . . . and any other information which bears on the prisoner's suitability for release." Furthermore, "[c]ircumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Given Petitioner's institutional behavior record, the Governor properly considered this information in determining Petitioner was not suitable for release.

The Governor also relied on the facts of the commitment offense. Pursuant to § 2402(c)(1)(B), the Governor found the second degree murder was carried out in a dispassionate and calculated manner. This finding is supported by "some evidence." Petitioner and his crime partners planned the robbery and assaulted an individual knocking him to the ground. While he was on the ground, one of the crime partners fired a shot into the victim's back. They then left him for dead while making off with his wallet. These facts certainly support the Governor's

1   finding of a calculated and dispassionate murder per § 2402(c)(1)(B).

2       The Governor also found several positive factors in Petitioner's background. The
3   Governor noted that Petitioner had acquired training in printing, bakery, office services, shoe
4   repair, and computers. It was further noted that Petitioner had completed several self-help and
5   therapy programs. Nevertheless, the Governor noted Petitioner had not upgraded himself
6   educationally. More importantly, the Governor found Petitioner had no parole plans for
7   employment and no real job prospects upon release, and Petitioner had not inquired into
8   receiving assistance upon release. Given Petitioner's history of committing robberies, this was
9   indeed relevant and significant since being able to support oneself financially is critical to
10  success upon parole. Thus, the Governor reasonably determined that Petitioner remained an
11  unreasonable risk of danger to society if released.

12      It is apparent the Governor considered all relevant evidence in this case and carefully
13  balanced and assessed the various factors. Those findings were supported by at least "some
14  evidence."

15      Petitioner also contends the Governor is relying on the immutable circumstances of the
16  underlying offense and his juvenile criminal history. The Ninth Circuit has held that serious
17  questions involving a prisoner's liberty interest in parole would be raised if the Board or
18  Governor continued to rely solely on the gravity of the offense and conduct prior to
19  imprisonment to justify denial of parole, despite a prisoner's continuing demonstration of
20  exemplary behavior and evidence of rehabilitation. Biggs, 334 F.3d at 916. As discussed above,
21  however, the circumstances of the offense and Petitioner's past criminal history, while
22  significant, were not the only reasons for the Governor's decision. The Governor also relied on
23  Petitioner's institutional misconduct and lack of realistic parole plans in denying parole.

24      Petitioner also alleges his sentence violates his equal protection rights because
25  indeterminately sentenced prisoners are treated differently than other prisoners. Because the
26  preferential treatment alleged in this claim is neither based on a suspect classification nor
27  impinges on constitutionally protected rights, it must merely withstand rational basis review. City
28  of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 440 (1985). As discussed above, the

Governor's decision is founded on a rational basis. See also McGinnis v. Royster, 410 U.S. 263, 270 (1973) (Supreme Court stated that legislative classifications and groupings created to enable the determination of an optimal time for parole eligibility require only some rational basis to sustain them.). Therefore, this claim is also without merit.

Petitioner next complains his sentence has become disproportionate as compared to his offense. A criminal sentence that is not proportionate to the crime for which a defendant is convicted may violate the Eighth Amendment. However, no inference of gross disproportionality can be drawn in this case. Petitioner was convicted of second degree murder. His sentence of 15 years to life is not grossly disproportionate to his crime. In addition, the Governor's act of reversing the parole board's recommendation does not violate the Eighth Amendment. See United States v. O'Driscoll, 761 F.2d 589, 599 (10th Cir.1985) ("A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and unusual punishment.").

Finally, Petitioner claims the Governor's decision has rendered his plea agreement invalid. Petitioner states he was induced to plead guilty to second degree murder and forego a trial to avoid exposing himself to a first degree murder conviction and sentence. However, the Governor's decision has converted his sentence to one which he would have received had he been tried and found guilty of first degree murder. Petitioner's claim is without merit. Petitioner was sentenced to a term of fifteen years to life. As correctly argued by Respondent, Petitioner has submitted no evidence that he was informed he would serve a set term or that the Governor would not reverse a recommendation of parole by the Board. Therefore, the claim must be rejected.

In light of the above, it cannot be said that the state court resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be DENIED; and

2. Judgment be entered in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 9, 2007**           /s/ **Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE